# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| FOUNDERS INSURANCE COMPANY,                    ) | |
| ) | |
| Plaintiff,                    ) | |
| ) | |
| vs.                    ) | |
| )                    | No. 2:13-cv-3035-DCN |
| RICHARD RUTH'S BAR & GRILL LLC, ) | |
| RICHARD RUTH, SR., JANE RUTH,   ) | |
| and GEORGE GIANNARIS, *as guardian* ) | |
| *for* EMMANUEL KEHAGIAS,                    ) | |
| ) | |
| Defendants.                    ) | |
| _____) | |
| ) | |
| RICHARD RUTH'S BAR & GRILL LLC, ) | |
| RICHARD RUTH, SR., and JANE RUTH, ) | |
| and GEORGE GIANNARIS, as guardian ) | No. 2:14-cv-03272-DCN |
| for EMMANUEL KEHAGIAS,                    ) | |
| ) | |
| Plaintiffs,                    ) | |
| ) | |
| vs.                    ) | |
| )                    | **ORDER** |
| FOUNDERS INSURANCE COMPANY,  ) | |
| BROWN & BROWN, INC., HULL &    ) | |
| COMPANY, INC., and UTICA MUTUAL ) | |
| INSURANCE COMPANY,                    ) | |
| ) | |
| Defendants.                    ) | |
| _____) | |

This matter comes before the court on bad faith action (2:14-cv-03272) defendants Brown & Brown, Inc. ("Brown") and Hull & Company, Inc's ("Hull") motion for summary judgment. ECF No. 158. For the reasons set forth below, the court grants Brown's motion for summary judgment. The court further grants Hull's motion for summary judgment.

1

## I. BACKGROUND[1]

The court will dispense with a lengthy recitation of the underlying facts and mention only those facts that are pertinent to this specific motion. On September 29, 2012, a patron of Richard Ruth's Bar and Grill, LLC struck Emmanuel Kehagias ("Kehagias") during a pool game, and Kehagias suffered severe injuries and permanent brain damage as a result. George Giannaras was appointed to serve as Kehagias's guardian (collectively "Kehagias"). This motion relates to a consolidated matter involving two separate but related actions regarding Founders Insurance Company's ("Founders") coverage obligations with respect to Kehagias's injuries under a general liability policy (the "Policy") purchased by Richard Ruth, Jane Ruth, and Richard Ruth's Bar and Grill, LLC (the "Ruths"). The first is a declaratory judgment action, 2:13-cv-3035, in which plaintiff Founders requests that the court declare that it is not required to provide coverage under the Policy because the Ruths failed to provide timely notice of the underlying personal injury lawsuit, resulting in substantial prejudice. The second action is a bad faith action, 2:14-cv-3272, filed by the Ruths and Kehagias, alleging that

---

[1] Founders and Utica filed a motion for leave to file a joint concise statement of undisputed material facts ("SUMF") on October 14, 2015 in "an effort to streamline its submissions and avoid duplication." ECF No. 156. The motion contains 56 exhibits. ECF No. 157. Founders cites the SUMF within the various motions in support of its factual contentions and arguments. On November 11, 2015, the Ruths and Kehagias filed a response in opposition to Founders's motion to file a joint concise statement. The Ruths and Kehagias do not oppose the motion but do not concede that they agree that the facts contained therein are undisputed. Indeed, the Ruths contend that many of the facts are disputed. However, the Ruths do not dispute Founders's ability to file the motion. ECF No. 177. The court grants Founders's motion to file the joint concise statement but will not consider the facts contained therein as undisputed. Given that there are two docket numbers in this case and the parties have filed countless submissions and exhibits, the court will refer to the exhibits attached to Founders's motion, ECF No. 157, within this order. Therefore, a direct citation to an Exhibit refers to the exhibits contained and numbered in ECF No. 157 under docket 2:13-cv-3035.

Founders, Hull,[2] Brown, and Utica Mutual Insurance Company ("Utica"),[3] failed to properly handle the underlying personal injury claim. The Ruths assigned their rights in the bad faith action to Kehagias pursuant to an Assignment dated May 28, 2014.

The Ruths have used Cherie Dumez ("Dumez") of the Cherie Dumez Agency as their insurance agent for approximately ten years. Dumez Dep. 20:15–21:12. To obtain the Policy, the Ruths completed an application for insurance and Dumez submitted the application to Hull, an insurance broker and wholesaler, to obtain quotes from different insurers. Dumez Dep. 19:3–11, 70:5–16. Dumez determined that Founders offered the best quote. Id. Hull is a subsidiary of Brown. Hull operates pursuant to producer agreements with various insurers, including Founders. The Founders producer agreement provides:

> PRODUCER [Hull] agrees that the services performed by it pursuant to this agreement shall be performed as an independent contractor and not as the agent of employee of COMPANY [Founders].

ECF No. 166 Ex. A.

On November 12, 2012, the Anastopoulo Law Firm sent the Ruths a letter notifying them that Kehagias had retained the firm to represent him in connection with the injuries he sustained at the bar. Ms. Ruth faxed the letter to Dumez. Ms. Ruth Depo. 41:7–20. Dumez forwarded the letter to Melanie Yount ("Yount") at Hull on November 27, 2012. Dumez Dep. 39:9–40:9, ECF No. 157 Ex. 18. Kehagias alleges that Hull failed to forward the letter to Founders or forwarded the letter in a in a manner that appeared to be connected to a separate claim. Dumez, Hull, and Founders exchanged a

---

[2] Hull is a subsidiary of Brown. ECF No. 96, at 3.
[3] Founders in a wholly-owned subsidiary of Utica. Am. Compl. ¶ 10, ECF No. 89, at 2

3

series of emails on January 9, 2013.  That same day, Dumez sent the letter from the Anastopoulo Law Firm a second time.  ECF No. 157 Ex. 19.  Yount responded to the email and stated:  "Please see attached from the company.  It appears that they are not going o [sic] defend the insured per the exclusions in the policy.  Please advise of any questions or I [sic] can do anything else."  ECF No. 180 Ex. 10.  Dumez responded: "Thanks for this….but there is yet…another one for an assault and battery claim that happened in 2012. That is the biggie we are worried about."  Id.  Dumez's hand-written notes on the email state that "Melanie sent [Dumez] info on wrong claim."  Id.

Hull and Brown (collectively "Hull") filed the present motion on October 14, 2015.  ECF No. 158.  Kehagias filed a response in opposition on November 12, 2015.  ECF No. 179.  The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Anderson, 477 U.S. at 255.

### III.   DISCUSSION

Hull argues that the court should grant its motion for summary judgment because: (1) the Ruths did not assign Kehagias any claims they may have had against Brown; (2) there is no evidence that Hull or Brown owed the Ruths a duty; (3) the Ruths failed to mitigate their damages; (4) the Ruths were comparatively negligent; and (5) neither Brown nor Hull had a duty to exercise good faith because they were not an "insurer." The court will address each of Hull's arguments in turn.

#### A.   Assignment

Hull first argues that the May 28, 2014 assignment ("Assignment") does not grant Kehagias a right to pursue claims against Brown, the parent corporation of Hull. The Assignment states that the Ruths "irrevocably assign the [Kehagias] all legally assignable

rights, remedies, titles and/or interest in their claim or claims for damages against Founders and Hull & Co." ECF No. 157 Ex. 49. Therefore, the assignment did not give Kehagias the right to sue Brown. Further, during the December 14, 2015 hearing, Kehagias's attorney stated: "There is no dispute about Brown & Brown. That's why I didn't address it in my briefing. And, you know, they are out. There is no dispute there." Hr'g Tr. 74:7–9. As such, Brown is dismissed from this action.

### B.     Negligence Claim

Hull next argues that Hull cannot be liable for negligence because it did not owe the Ruths a duty. ECF No. 166, at 9.

To prevail in an action founded in negligence, Kehagias must establish three essential elements: (1) a duty of care owed by Hull to Kehagias; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty. Vinson v. Hartley, 477 S.E.2d 715, 720 (S.C. Ct. App. 1996). Gross negligence is "the failure to exercise slight care." Steinke v. S.C. Dept of Labor, Licensing & Regulation, 520 S.E.2d 142, 153 (S.C. 1999). The South Carolina Supreme Court has also defined gross negligence as "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." Id. Gross negligence "is a relative term, and means the absence of care that is necessary under the circumstances." Id. (quoting Hollins v. Richland Cty. School Dist. One, 427 S.E.2d 654, 656 (S.C. 1993).

Kehagias argues that because Hull voluntarily undertook a duty to serve as an intermediary between the Ruths and Founders, it assumed a duty to exercise due care. The existence and scope of the duty are questions of law for the court to determine.

Ballou v. Sigma Nu General Fraternity, 352 S.E.2d 488 (S.C. Ct. App. 1986).  An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance.  Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003) (citing Carson v. Adgar, 486 S.E.2d 3, 5 (S.C. 1997)).  "Foreseeability of injury, in and of itself, does not give rise to a duty."  Id. (citing S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 325 (S.C. 1986)).

The South Carolina Court of Appeals has "long recognized that one who assumes to act, even though under no obligation to do so, thereby becomes obligated to act with due care."  Miller v. City of Camden, 451 S.E.2d 401, 404 (S.C. Ct.  App. 1994) (citing Crowley v. Spivey, 329 S.E.2d 774 (S.C. Ct. App. 1985)).  Cases applying this doctrine have adopted the rule outlined in the Second Restatement of Torts that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if . . . his failure to exercise such care increased the risk of such harm."  Russell v. City of Columbia, 406 S.E.2d 338, 340 (S.C. 1991).  However, this principle generally applies only to situations in which a person suffers physical harm from the failure to exercise reasonable care and not cases in which financial harm is the only damage.  See, e.g., Johnson v. Robert E. Lee Acad., Inc., 737 S.E.2d 512, 514 (S.C. Ct. App. 2012) (refusing to apply the doctrine to recognize a duty of care between an accounting firm and a bookkeeper and office manager for the firm's negligence in analyzing financial records); Hendricks v. Clemson Univ., 578 S.E.2d 711, 714 (S.C.

2003) ("The line of cases Miller discusses have thus far been limited to situations in which a party has voluntarily undertaken to prevent physical harm, not economic injury.").

The court is unaware of any cases in South Carolina in which liability for harm that results from the failure to exercise reasonable care once a duty is voluntarily assumed extends to anything other than physical harm. Although Kehagias suffered physical injury, Hull's failure to exercise reasonable care did not cause the damage. Therefore, the court declines to expand this doctrine to recognize a duty under these circumstances.

Further, the South Carolina Supreme Court has "decline[d] to recognize a general duty of due care from an independent insurance adjuster or insurance adjusting company to the insured, and thereby align[ed] South Carolina with the majority rule on this issue." Charleston Dry Cleaners, 586 S.E.2d at 588–89. In Charleston Dry Cleaners, the court held that neither a bad faith claim nor a negligence claim can be brought against an independent adjustor or independent adjusting company. Id. The court noted, however, that "'the authorized acts of an agent are the acts of the principal.'" Id. (quoting ML-Lee Acquisition Fund, L.P. v. Deloitte & Touche, 489 S.E.2d 470, 472 (S.C. 1997)). Further, "a bad faith claim against the insurer remains available as a source of recovery." Id. "Therefore, in a bad faith action against the insurer, the acts of the adjuster or adjusting company (agent) may be imputed to the insurer (principal)."

Although Charleston Dry Cleaners involved independent adjusting companies hired by the insurers to provide adjusting, investigation, claims administration, and information management services rather than insurance brokers like Hull, the court finds the reasoning applicable. Id. Hull, like the adjusters in Charleston Dry Cleaners, is

8

independent of Founders and was retained to provide services to Founders.  Therefore, the court declines to recognize an independent duty under these circumstances.

However, if there is evidence that Hull acted as Founders agent, and acted negligently within the scope of the agency relationship, its negligence can be imputed onto Founders.  In South Carolina, "[a] party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts."  Orphan Aid Soc'y v. Jenkins, 362 S.E.2d 885, 887 (S.C. Ct. App. 1987) (quoting McCall v. Finley, 362 S.E.2d 26 (S.C. Ct. App. 1987)).  "It is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority.  Id.  "An agent's authority is composed of his or her actual authority, whether express or implied, together with the apparent authority which the principal by his or her conduct is precluded from denying.  Thus, an agent's authority must be either expressed, implied, or apparent."  Roberson v. S. Fin. of S.C., Inc., 615 S.E.2d 112, 115 (S.C. 2005).  "While actual authority is expressly conferred upon the agent by the principal, apparent authority is when the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority."  Id. (citing Moore v. North Am. Van Lines, 423 S.E.2d 116, 118 (S.C. 1992)).  "While actual authority is expressly conferred upon the agent by the principal, apparent authority is when the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority."  Id. (citing Moore, 423 S.E.2d at 118).

Hull was retained by Founders to procure insurance contracts on its behalf.  Hull acted as a Producer and "middleman" between the Ruths and Founders pursuant to a "Producer Agreement."  Although the Producer Agreement between Founders and Hull

stated that Hull would serve as an independent contractor, the language of a private agreement is not dispositive of an agency relationship. Hull's name and information were on the front page of the Policy as the "Producer." The Producer Agreement between Founders and Hull stated that "PRODUCER [Hull] shall, immediately following receipt, notify COMPANY [Founders] in writing of any loss or claim against any policy of insurance issued by COMPANY." ECF No. 166 Ex. 4, at 3. Hull served as the middleman between the Ruths and Founders for this claim and for previous claims. Dumez Dep. 74:7–9. Dumez testified that "the way it would always work . . . is that if [the Ruths] notified [her], [she] would notify [Yount], and then [Yount] would open the claim with the insurance company." Dumez Dep. 85:8–25; 86:1–15. Further, when Dumez forwarded the original letter from the Anastopoulo Law Firm, Yount at Hull gave Dumez "the impression that she would then sent it to Founders." Id. There is sufficient evidence to create a genuine issue of material fact as to whether Hull was acting as Founders's agent and was negligent in performing authorized acts within the agency relationship. Although Hull cannot be independently liable for its alleged negligent processing of the original notice letter, its alleged negligence can be imputed to Founders.

Therefore, the court grants Hull's motion for summary judgment as to Kehagias's negligence claim. However, Founders may be held liable if Kehagias establishes that Hull was indeed acting as Founders's agent and was negligent in processing the original notice letter.[4]

---

[4] The court reminds the parties that although Hull's negligence may be imputed to Founders, the damages are limited to $105,000.00 because there is no evidence of bad faith or willful, wanton, or reckless conduct. Further, as fully set forth in the court's order on Founders's motion for summary judgment in the bad faith action, Kehagias's

### C. Causation

Hull next argues that even if it breached a duty of care, the breach did not proximately cause the damages. Hull argues that the foundation of Kehagias's negligence claim is too speculative because it assumed that "if Hull had forwarded the letter of representation to Founders, Founders would have opened a claim, stayed in contact with plaintiff's counsel, and would have been advised by plaintiff's counsel before suit was filed." ECF No. 166, at 14. Although the court recognizes that the causation analysis is attenuated, at best, there is sufficient evidence to create a genuine issue of material fact as to whether Founders would have handled the claim and answered the suit had Hull forwarded the initial notice letter, preventing the entry of default.[5]

---

bad faith claim does not rest on Hull's failure to process the initial letter of representation. H'rg Tr. 56:20–57:15. ("I do concede – I'm not trying – we are not trying to say as a part of the bad faith that the mishandling of the original claim letter is the basis, or any basis, for the bad faith."). Therefore, the significance of this ruling is tempered by the fact that Founders has already offered to pay the policy limits and continued to make such an offer during the December 14, 2015 hearing.

[5] Hull also argues that the Ruths failed to mitigate their damages because they directed Founders to withdraw its appeal of the default judgment, and that the Ruths were comparatively negligent. Generally, a "comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide." Snavely v. AMISUB of S.C., Inc., 665 S.E.2d 222, 226 (S.C. Ct. App. 2008) (quoting Bloom v. Ravoira, 529 S.E.2d 710, 713 (2000)). "In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is the plaintiff's negligence exceeded fifty percent." Id. The court finds that the Ruths' comparative negligence is a question for the jury because the evidence on the record does not establish that the Ruths were more negligent than Hull as a matter of law. Additionally, a defendant who claims a plaintiff's damages could have been mitigated has the burden of proving that mitigation is possible and reasonable. Moore v. Moore, 599 S.E.2d 467, 478 (S.C. Ct. App. 2004). "Whether an employee has fully mitigated his damages is a question of fact to be determined from the circumstances of each case." Chastain v. Owens Carolina, Inc., 426 S.E.2d 834, 836 (S.C. Ct. App. 1993); see also Cisson Const., Inc. v. Reynolds & Assocs., Inc., 429 S.E.2d 847, 849 (S.C. Ct. App. 1993) ("The reasonableness of a party's actions to mitigate damages is a question of fact which cannot be decided as a matter of law when there is conflicting

### D.     Bad Faith Claim

Hull also argues that it is entitled to summary judgment on Kehagias's bad faith claim because it is not a party to the insurance contract. In his response, Kehagias does not address Hull's arguments as to the bad faith claim.

For the same reasons Utica is not liable for bad faith, Hull is not liable for bad faith. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 771–72 (D.S.C. 2006) (citing Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983) (emphasis added)). An insured establishes that an insurer breaches this covenant of good faith if the following elements are met: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; (4) causing damage to the insured. Id. (citing Bartlett v. Nationwide Mut. Ins. Co., 348 S.E.2d 530 (S.C. Ct. App. 1986); Nichols, 306 S.E.2d at 616.

In South Carolina, although the insurer owes the insured a duty of good faith and fair dealing, "this duty of good faith arising under the contract does not extend to a person who is not a party to the insurance contract." Charleston Dry Cleaners, 586 S.E.2d at 588 (citing Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co., 310

---

evidence."). The court determines that there is conflicting evidence as to whether the Ruths mitigated their damages; therefore, mitigation is also a jury question.

S.E.2d 163 (S.C. Ct. App. 1983)). "Thus, no bad faith claim can be brought against an independent adjuster or independent adjusting company." Id.; see also Nat'l Specialty Ins. Co. v. AIG Domestic Claims, Inc., No. 3:09-cv-1183, 2010 WL 200800, at *2 (D.S.C. Jan. 14, 2010) ("Moreover, South Carolina does not recognize a cause of action for bad faith against an independent adjusting company."). Hull is not an insurer and does not have a contractual relationship with the Ruths. Therefore, the court grants Hull's motion for summary judgment as to Kehagias's bad faith claim because they are not an insurer. See Nat'l Specialty Ins. Co. v. AIG Domestic Claims, Inc., No. 3:09-cv-1183, 2010 WL 200800, at *2 (D.S.C. Jan. 14, 2010) ("Neither AIG nor National Specialty were party to the policy issued by National Union, and therefore National Specialty cannot establish the existence of a mutually binding contract for insurance necessary to pursue its [bad faith] claim.").

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** Brown's motion for summary judgment.  The court further **GRANTS** Hull's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 8, 2016**
**Charleston, South Carolina**