**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

FOUNDERS INSURANCE COMPANY,   )
                              )
            Plaintiff,        )
                              )
    vs.                       )
                              )          No. 2:13-cv-03035-DCN
RICHARD RUTH'S BAR & GRILL LLC, )
RICHARD RUTH, SR., JANE RUTH,  )
and GEORGE GIANNARAS, *as guardian* )
*for* EMMANUEL KEHAGIAS,       )
                              )
            Defendants.        )
_____)
                              )
RICHARD RUTH'S BAR & GRILL LLC, )
RICHARD RUTH, SR., and JANE RUTH, )
and GEORGE GIANNARAS, as guardian )          No. 2:14-cv-03272-DCN
for EMMANUEL KEHAGIAS,         )
                              )
            Plaintiffs,        )
                              )
    vs.                       )
                              )          **ORDER**
FOUNDERS INSURANCE COMPANY,    )
BROWN & BROWN, INC., HULL &     )
COMPANY, INC., and UTICA MUTUAL )
INSURANCE COMPANY,             )
                              )
            Defendants.        )
_____)

This matter comes before the court on bad faith action (2:14-cv-03272) defendant

Founders Insurance Company's ("Founders") motion for summary judgment in the bad

faith action. ECF No. 86. For the reasons set forth below, the court grants in part and

denies in part Founders's motion for summary judgment.

1

# I.  BACKGROUND[1]

This is a consolidated matter that involves two separate but related actions.  The

first is a declaratory judgment action, 2:13-cv-03035, in which plaintiff Founders

requests that the court declare that it is not required to provide coverage under a general

liability policy ("the Policy")[2] because the insureds failed to provide timely notice of the

underlying personal injury lawsuit.  The second action is a bad faith action, 2:14-cv-

03272, filed by declaratory judgment action defendants and bad faith action plaintiffs

Richard Ruth's Bar & Grill LLC ("Richard's Bar"), Richard Ruth, Sr. ("Mr. Ruth"), Jane

Ruth ("Ms. Ruth") (collectively "the Ruths"), and Kehagias, as the Ruths' assignee,

alleging that Founders, Utica Mutual Insurance Company ("Utica"),[3] Hull & Company,

---

[1] Founders and Utica filed a motion for leave to file a joint concise statement of
undisputed material facts ("SUMF") on October 14, 2015 in "an effort to streamline its
submissions and avoid duplication." ECF No. 156. The motion contains 56 exhibits.
ECF No. 157. Founders cites the SUMF within the various motions in support of its
factual contentions and arguments. On November 11, 2015, the Ruths and Kehagias filed
a response in opposition to Founders's motion to file a joint concise statement. The
Ruths and Kehagias do not oppose the motion but do not concede that they agree that the
facts contained therein are undisputed. Indeed, the Ruths contend that many of the facts
are disputed. However, the Ruths do not dispute Founders's ability to file the motion.
ECF No. 177. The court grants Founders's motion to file the joint concise statement but
will not consider the facts contained therein as undisputed. Given that there are two
docket numbers in this case and the parties have filed countless submissions and exhibits,
the court will refer to the exhibits attached to Founders's motion, ECF No. 157, within
this order. Therefore, a direct citation to an Exhibit refers to the exhibits contained and
numbered in ECF No. 157 under docket 2:13-cv-3035.

[2] Founders does not sell insurance policies directly to consumers. Rather, an
insurance wholesaler markets and sells the policies through local independent agents.
The Ruths purchased their Policy from the Cherie Dumez Agency. The Policy was
procured by an insurance wholesaler known as Hull & Company, Inc. ("Hull"), a
defendant in the bad faith action. Hull is a wholesale broker of insurance. ECF No. 43,
Kehagias Am. Compl. ¶ 14.

[3] Founders is a wholly-owned subsidiary of Utica. Am. Compl. ¶ 10, ECF No. 89,
2.

Inc. ("Hull"), and Brown & Brown, Inc. ("Brown")[4] failed to properly handle the underlying personal injury claim.[5]

On September 29, 2012, a patron of Richard's Bar struck Kehagias during a pool game, and Kehagias suffered severe injuries and permanent brain damage as a result. After the incident, George Giannaras ("Giannaras"), Kehagias's brother-in-law, was appointed to serve as Kehagias's Guardian. On November 21, 2012, the Anastopoulo Law Firm sent Mr. Ruth a letter ("notice letter") notifying him that Kehagias retained the firm to represent him in connection with the injuries he sustained at the bar. Kehagias's Mot. Summ. J. Ex. 1. The notice letter asked that Mr. Ruth "[p]lease forward this letter to any and all insurance carriers with policies applicable to Richard's Bar and Grill, Richard Ruth, and the building housing Richard's Bar and Grill immediately." Id. On November 26, 2012, Ms. Ruth sent the notice letter to their local agent, Cherie Dumez ("Dumez") at the Cherie Dumez Agency. Ex. 17. The following day, Dumez emailed the notice letter to Hull. Ex. 18. Kehagias filed the underlying injury suit on December 19, 2012 in the Court of Common Pleas for the Ninth Judicial Circuit.[6] Ex. 7. Ms. Ruth was served with the Summons and Complaint on January 8, 2013.[7] Dumez emailed the notice letter to Hull a second time on January 9, 2013. Ex. 19.

---

[4] Hull is a subsidiary of Brown. ECF No. 96, at 3.
[5] The Ruths assigned their right to sue in a bad faith action to Kehagias on May 28, 2014. Ex. 49
[6] In the underlying personal injury suit, Kehagias asserted claims for negligence, assault and battery, negligent security, and gross negligence. See Ex. 7.
[7] Notably, Ms. Ruth is not the registered agent of Richard's Bar and is not authorized to receive service on behalf of Richard's Bar. Further, Ms. Ruth is not a member of the LLC, nor does she have any ownership interest in the LLC. Founders disputes that Richard's Bar was properly served. However, in the order denying Founders's motion to set aside default in the underlying personal injury lawsuit, Judge

3

Kehagias contends that the Ruths notified Dumez and that Dumez in turn notified Hull, the insurance wholesaler. Kehagias further contends that "Hull either failed to forward the letter to Founders, or, if they did, Founders failed to process it." Kehagias Mot. for Summ. J. 7. Neither the Ruths, nor anyone on their behalf, filed an answer, and on February 22, 2013, the court entered an Order for Entry of Default against the Ruths in the underlying action. Ex. 26. Founders received notice of the underlying lawsuit on May 15, 2013 when Hull sent the notice letter to Founders. Ex. 20 (email from Hull to Founders describing the claim as a "new claim" and requesting the "claim number ASAP as the agent originally submitted in January"). Founders disputes Kehagias's claims that the Ruths notified Dumez after being served and that Dumez notified Hull. Founders's Resp. 5 n.5. Upon receiving notice, Founders assigned the claim to adjustor Carlos Ortiz ("Ortiz"), and he began an investigation. Founders "escalated" the claim after learning of the severity of the injuries, opened a separate "coverage" file, and assigned adjustor Alberta Squalls ("Squalls") to investigate the late notice issue.

On May 22, 2013, J.D. Smith ("Smith"), retained by Founders to represent the Ruths in the underlying action, filed a motion to set aside the default. On August 27, 2013, the Anastopoulo Law Firm sent an offer of compromise ("Offer") to Smith. Ex. 33. The letter included a demand "for payment of policy limits" and stated: "At 5:00 p.m. EDT on September 9, 2013, this offer will be withdrawn and we will obtain an excess judgment against your insured." Id. The offer did not include a specific amount and stated that "[i]f any condition is not met, or if any additional condition is imposed by

Nicholson stated: "This Court finds based on the evidence submitted by Plaintiff, that Mrs. Ruth was an agent and manager of the Defendant Richard Ruth's Bar and Grill, and that service was thereby effectuated." Kehagias's Mot. for Summ. J. Ex. 10, at 2.

4

[Founders], including but not limited to conditions of indemnification or the waiver of any rights or claims not specified herein, this offer of compromise will be withdrawn." Id. In response to the Offer, Smith sent Kehagias's attorney an email inquiring about the specific amount demanded, stating: "I understand that this policy has limits of $50,000 and want to make sure we are on the same page with the limits before I forward the demand to the carrier." Ex. 35. Kehagias's attorney responded that he understood the policy limits to be $1,005,000.00 and was therefore demanding that amount. Id.

On September 3, 2013, Squalls responded to the offer of compromise, rejecting the offer but providing a counteroffer of $50,000.00. Ex. 40. On September 10, 2013, Kehagias's attorney sent a notice of the withdrawal of the offer of compromise because no payment had been received. Ex. 42. On October 29, 2013, Squalls sent Kehagias's attorney a second offer of compromise. Ex. 50. Squalls stated that "[b]ased on [Founders's] re-examination of its Policy provisions as may apply to this claim, Founders has determined that the maximum available coverage which could potentially be afforded to its insureds" was $105,000.00. Id. Kehagias's attorney never responded to Founders's second offer. Kehagias filed an opposition to the Ruths' motion to set aside the entry of default on October 24, 2013, and the state court conducted a hearing on the motion on October 30, 2013. Founders filed the present declaratory judgment action on November 6, 2013.

On January 17, 2014, Judge Nicholson denied the Ruths' motion to set aside the entry of default in the underlying state court action. Ex. 45. Judge Newman held a damages hearing on March 19, 2014, and on April 29, 2014, entered a default judgment against the Ruths in the amount of $5,000,000.00. Ex. 55. At the Ruths' request, Smith

appealed Judge Newman's default judgment on May 28, 2014. That same day, the Ruths executed an agreement with Kehagias under which Kehagias agreed not to execute the judgment against the Ruths, and the Ruths assigned their right to sue Founders and Hull for bad faith to Kehagias. Ex. 49.[8] On May 29, 2014, one day after the assignment, the Ruths' personal counsel advised Founders that the Ruths no longer wished to appeal. Ex. 50. Kehagias, as the Ruths' assignee, filed the bad faith action on August 14, 2014.[9] On August 20, 2014, the Ruths' personal counsel directed Founders to dismiss the appeal. Ex. 52. Founders thereafter authorized Smith to dismiss the appeal in accordance with the Ruths' request. Ex. 53.

In the bad faith action, Kehagias, as the Ruths' assignee, claims that:

(1) Founders failed to properly investigate the claim and defend the Ruths, resulting in the entry of default against them in the underlying personal injury lawsuit; and

(2) Founders acted in bad faith by failing to settle the underlying case for the policy limits and failing to otherwise act as a reasonable, prudent insurance company under the circumstances. On October 22, 2014, Founders dismissed the appeal, Ex. 54, and a final judgment was entered on November 25, 2014, Ex. 55.

---

[8] Notably, as discussed below, the Ruths did not assign their right to sue Utica or Brown. Ex. 49.

[9] Kehagias brings the following claims in his bad faith action: (1) breach of contract for failure to defend and timely pay the policy limits, Kehagias's Am. Compl. ¶¶ 58–65; (2) negligence/gross negligence in processing the claim because Hull received the November 12, 2012 letter from the Anastopoulo Law Firm but Hull and Founders failed to properly process and handle the letter, id. ¶¶ 67–73; (3) bad faith failure to properly and effectively investigate the claim and failure to settle the claim within the policy limits and failure to otherwise act as a reasonable and prudent insurance company under the circumstances, id. ¶¶ 78–102; and (4) negligence per se for violation of S.C. Code Ann. § 38-47-10, which requires an insurance adjuster to be licensed in South Carolina, id. ¶¶ 104–115.

Founders filed the present motion for summary judgment on October 14, 2015. ECF No. 86. Founders contends that it is entitled to summary judgment on all of Kehagias's claims because it does not have to provide coverage—as more fully discussed in the court's order addressing Founders's motion for summary judgment in the declaratory judgment action—and therefore cannot be liable for bad faith. Founders also argues that it never had the opportunity to settle the underlying case within the policy limits and had a reasonable basis to decline the settlement demand. Founders also seeks summary judgment as to the Kehagias's request for punitive damages and Kehagias's claim that Founders is liable for negligence per se. The Ruths and Kehagias (hereafter collectively "the Ruths") filed a joint response in opposition to the motion on November 12, 2015. ECF No. 117. Founders filed a joint response in support of various motions on December 1, 2015. ECF No. 123. Founders's motion for summary judgment is now ripe for the court's review.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d

411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party

must identify an error of law or a genuine issue of disputed material fact.  See Fed. R.

Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also

Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving

party, the nonmoving party must rely on more than conclusory allegations, mere

speculation, the building of one inference upon another, or the mere existence of a

scintilla of evidence.  See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a

party opposing a properly supported motion for summary judgment . . . must 'set forth

specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522

(quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to

provide evidence establishing that the factfinder could reasonably decide in his favor,

then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary

requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

"[A]t the summary judgment stage the judge's function is not himself to weigh

the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Id. at 249.  When the party moving for summary judgment does

not bear the ultimate burden of persuasion at trial, it may discharge its burden by

demonstrating to the court that there is an absence of evidence to support the non-moving

party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The non-movant must

then "make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

# III.  DISCUSSION

In the bad faith action, Kehagias, as the Ruths' assignee, asserts claims against Founders for:  (1) breach of contract claim; (2) bad faith failure to settle within policy limits claim; (3) negligent handling, processing, and adjusting of the insurance matter; and (4) negligence per se on the basis that its agents were not licensed in South Carolina as required by law.  Founders argues that it is entitled to summary judgment on all claims.

## A.     Breach of Contract Claim

Kehagias contends that Founders breached its contractual obligations to defend the Ruths and provide coverage under the Policy.  To establish a claim for breach of contract, Kehagias must establish (1) the existence of a contract, (2) its breach, and (3) the damages caused by such breach.  Branche Builders, Inc. v. Coggins, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009).  In South Carolina, the failure of the insured to comply with the obligations of the contract will release the insurer from liability.  Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 770 (D.S.C. 2006) (citing Hodges v. State Farm Mut. Auto. Ins. Co., 488 F.Supp. 1057, 1061 (D.S.C. 1980); Tucker v. State Farm Mut. Auto. Ins. Co., 103 S.E.2d 272 (S.C. 1958); Pharr v. Canal Ins. Co., 104 S.E.2d 394 (S.C. 1958); Crook v. State Farm Mut. Auto. Ins. Co., 98 S.E.2d 427 (1957)).  However, "avoidance of coverage will only be allowed where the insurer has shown that the failure to cooperate prejudiced the insurer's investigation of the case."  Id. (citing Squires v. Nat'l Grange Mut. Ins. Co., 145 S.E.2d 673 (S.C. 1965); Pharr, 104 S.E.2d 394).  For the reasons stated in the court's order on Founders's motion for summary judgment in the declaratory judgment action, Founders did not breach its duties to defend or indemnify

because the Ruths failed to provide proper notice as required under the Policy, which substantially prejudiced Founders. Therefore, the court grants Founders's motion for summary judgment as it pertains to Kehagias's breach of contract claim.[10]

## B.    Bad Faith Failure to Settle

Founders next argues that it cannot be liable for bad faith because there is no coverage owed under the Policy. Founders's Mot. ECF 87, at 9. Kehagias argues that his bad faith claim survives, even if there is no coverage for failure to provide notice. ECF No. 117, at 6. The exact basis of Kehagias's bad faith claim is unclear, but it appears to the court that the claim is based on Founders's failure to process the claim and failure to settle within Policy limits.

Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will injure the right of the other to receive the benefits of the agreement. Shiftlet, 451 F. Supp. 2d at 771–72 (citing Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983)). An insured establishes that an insurer breaches this covenant of good faith if the following elements are met: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; (4) causing damage to the insured. Id. (citing Bartlett v. Nationwide Mut. Ins. Co., 348 S.E.2d 530 (S.C. Ct. App. 1986); Nichols, 306 S.E.2d at 616). Under South Carolina law, an insured may recover damages for bad faith

---

[10] Consequently, Utica, Founders's parent corporation, is also entitled to summary judgment on Kehagias's breach of contract claim.

denial of coverage if he proves that there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract. Id. (citing Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co., 241 F. Supp. 2d 572, 576 (D.S.C. 2002)). However, "if there was an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it." Id. (citing Mixson, Inc. v. Am. Loyalty Ins. Co., 562 S.E.2d 659 (S.C. Ct. App. 2002)). "Whether such an objectively reasonable basis for denial existed depends on the circumstances existing at the time of the denial." Id. (citing State Farm Fire & Cas. Co. v. Barton, 897 F.2d 729 (4th Cir. 1990) (interpreting South Carolina law)). "When conflicting evidence is presented, summary judgment on the issue of bad faith is generally inappropriate; however, a court may grant summary judgment on this issue if, viewing the evidence in the light most favorable to the plaintiff, no reasonable finder of fact could have found for the plaintiff on her bad faith claim." Id. (emphasis added).

In Tadlock Painting Co. v. Maryland Casualty Co., 473 S.E.2d 52 (S.C. 1996), the South Carolina Supreme Court underscored its holding from previous cases that the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim but also to the manner in which it is processed. The court recognized that "the benefits due an insured are not limited solely by those expressly set out in the contract." Id. The South Carolina Supreme Court has further held that in disposing of a Tyger River claim, the factfinder "is entitled to consider negligence on the issue of unreasonable refusal to pay benefits." Nichols, 306 S.E.2d at 620.

The law of South Carolina clearly states that the failure of the insured to comply with the obligations of the contract releases the insurer from liability if such failure

prejudices the rights of the insurer. <u>Hodges</u>, 488 F.Supp. at 1061. In <u>Shiflet</u>, 451 F. Supp. 2d 763, an insurance company denied coverage after the insureds failed to comply with obligations under the policy to cooperate with the investigation, including providing access to certain financial records and providing an Examination under Oath ("EUO"). <u>Id.</u> at 772. The insureds sued the insurer for bad faith. <u>Id.</u> The court found that the insureds failed to fulfill their obligations under the policy to provide access to financial records and an EUO. <u>Id.</u> The court held that the insurer had an objectively reasonable ground for contesting the insurance claim and that the insurer "clearly did not improperly contest coverage, nor did [it] act in willful, wanton, or reckless disregard of [the insured's] rights under the [p]olicy." <u>Id.</u> Therefore, the court granted the insurer's motion for summary judgment as to the bad faith claim because "a reasonable jury could not find that [the insurer] denied the claim in bad faith." <u>Id.</u>

As fully outlined in the court's order on Founders's motion for summary judgment in the declaratory judgment action, there is no genuine issue of material fact that the Ruths failed to give Founders notice as required under the Policy, in turn causing Founders substantial prejudice. There is no genuine dispute that Founders did not receive notice of Kehagias's claim until May 2013, eight months after the incident, four months after the Ruths were served, and three months after the entry of default in the underlying personal injury action. Thus, Founders had a reasonable basis on which to deny coverage. <u>See</u> <u>Crossley v. State Farm Mut. Auto. Ins. Co.</u>, 415 S.E.2d 393, 397 (S.C. 1992) ("If there is a reasonable ground for contesting a claim, there is no bad faith.").

Therefore, the court grants Founders's motion for summary judgment as it pertains to Kehagias's bad faith claim for failure to defend and provide coverage.

## C. Opportunity to Settle Within Policy Limits

Even if the court were to hold that there is a genuine issue of material fact as to whether Founders received notice or suffered substantial prejudice, or both, Founders would be entitled to summary judgment on Kehagias's bad faith failure to settle claim.

On August 27, 2013, Kehagias's counsel sent the Ruths' attorney, James D. Smith ("Smith"), an offer of compromise (the "Offer"). ECF No. 83, Ex. 5. The Offer included a time-offer demand "for payment of policy limits, and, at 5:00 p.m. EDT on September 9, 2013, this offer will be withdrawn and we will obtain an excess judgment against your insured." Id. (emphasis added). The Offer did not include a specific amount and stated that "[i]f any condition is not met, or if any additional condition is imposed by [Founders], including but not limited to conditions of indemnification or the waiver of any rights or claims not specified herein, this offer of compromise will be withdrawn." Id. The Offer also stated that "if there is any language in the proposed Release or any other documents you send us that requires or even requests Emmanuel Kehagias to make representations or warranties regarding the absence of medical liens or hospital liens or bankruptcy proceedings, . . . the requirement or request will be considered a counteroffer and rejection." ECF No. 83 Ex. 5, at 7. Further, the Offer only released Founders's liability as to personal injury claims by Kehagias and not potential claims from the Ruths. Id. at 9 ("[T]he only release we will accept is one that is limited in its scope to protecting your insured from Emmanuel Kehagias's rights to the personal assets of your insured."). Lastly, in lieu of a signed release, the Offer required Founders to tender a "proposed" release to Kehagias along with its payment of policy limits. Id.

Founders argues that the Offer was patently unreasonable. Recently, in

Vanderhall v. State Farm Mutual Automobile Insurance Co., No. 4:14-cv-518, 2015 WL

1507838, at *4 (D.S.C. Mar. 30, 2015), Judge Gergel granted an insurer's motion for

summary judgment on a bad faith failure to settle claim. In Vanderhall, the plaintiff's

attorney sent a demand letter stating that he would give the insurer

> one opportunity to settle this claim by tendering . . . liability limits in exchange for a Covenant Not to Execute provided that said tender is made in writing on or before Friday, September 2, 2011, at noon.

Id. at *2. The offer was ambiguous and did not expressly state whether the proposed

settlement included all damages, both known and unknown, or whether it included all

outstanding liens and other potential claims against the alleged tortfeasors. Id. at *5. The

insurer responded with a letter that stated: "This settlement is inclusive of all economic

damages, known and unknown, and any liens, assignments or statutory rights of

recovery." Id. The court found that the added language was reasonable and that the

insurer's conduct in adding the language could not constitute the basis of a claim of bad

faith. Id. Founders uses Vanderhall to argue that Kehagias's offer was unreasonable and

did not constitute a good faith demand for settlement. However, the court does not find

Vanderhall directly applicable because the offer in Vanderall was silent as to whether the

proposed settlement included all claims, while Kehagias's Offer explicitly stated that it

did not include them. While the court agrees with Judge Gergel's analysis in Vanderhall,

the case does not extend to the present circumstances to deem Kehagias's Offer patently

unreasonable.

Moreover, the court does not find that Founders ever had a reasonable opportunity

to settle within the policy limits. In response to the Offer, Smith sent Kehagias's attorney

an email inquiring about the specific amount demanded, stating "I understand that this policy has limits of $50,000 and want to make sure we are on the same page with the limits before I forward the demand to the carrier." Ex. 35. Kehagias's attorney responded that he understood the Policy limits to be $1,005,000.00 and was therefore demanding that amount. Id. Smith forwarded the Offer to Ortiz along with his email exchange with Kehagias's attorney discussing the limits available under the Policy. Ortiz reviewed the Offer and the email exchange and asked Smith the following question: "JD – is he demanding $1,005,000.00?" Ex. 37. Smith responded: "He is." Id.

On September 3, 2013, Squalls responded to the offer of compromise, rejecting the offer but providing a counteroffer of $50,000.00. Kehagias's Mot. Summ. J. Ex. 6. On September 10, 2013, Kehagias's attorney sent a notice of the withdrawal of the offer of compromise because no payment had been received. Id. Ex. 7. On October 29, 2013, Squalls sent Kehagias's attorney a second offer of compromise. Squalls stated that "[b]ased on [Founders's] re-examination of its Policy provisions as may apply to this claim, Founders has determined that the maximum available coverage which could potentially be afforded to its insureds" was $105,000.00. Id. Ex. 8. Kehagias's attorney never responded to Founders's second offer.

It is clear that Kehagias's attorney—after reviewing the Policy and discussing the policy limits with his "coverage guy"—understood the policy limits to be $1,005,000.00, but all parties now agree that the policy limits are actually $105,000.00. Therefore, there was no meeting of the minds between the parties. Further, Giannaras testified that he would not have accepted $105,000.00 to settle the case. Ex. 10, Giannaras Dep. 107:5– 18 ("Question: Had you been offered the $105,000 that was offered in late October – had

you been offered that initially, would you have accepted it to settle Manny's case?

Answer: No.  Question: So short of them offering you the $5,000,000 by September 9th

at 5:00 p.m., you would not have settled.  Answer: Yes.").[11]

Lastly, South Carolina Rule of Civil Procedure 43(k) provides that "[n]o

agreement between counsel affecting the proceedings in an action shall be binding unless

reduced to the form of a consent order or written stipulation signed by counsel and

entered in the record, or unless made in open court and noted upon the record, or reduced

to writing and signed by the parties and their counsel."  The South Carolina Supreme

Court has held that Rule 43(k) applies to settlement agreements.  See Ashfort Corp. v.

Palmetto Constr. Grp., Inc., 458 S.E.2d 533, 534 (S.C. 1995).  Thus, even if Founders

had tendered the policy limits prior to the expiration of the demand letter, the settlement

would not be binding until it was entered into the record or reduced to writing and signed

by the parties and their counsel.

Therefore, the court holds that Founders never had a reasonable opportunity to

settle the claim within the policy limits.  See, e.g., Whiting-Turner Contracting Co. v.

Liberty Mut. Ins. Co., 912 F. Supp. 2d 321, 343 (D. Md. 2012) ("[T]o the extent that

there was no reasonable opportunity to settle the Nevada Suit within policy limits, a bad

faith failure-to-settle claim is not viable.").

---

[11]     Founders also cites Giannaras's testimony to argue that Kehagias cannot establish damages to recover on its bad faith claim.  Founders argues that because Giannaras would not have accepted the policy limits, Kehagias did not suffer any damages from Founders failure to settle within the policy limits.  However, this argument is not necessary to the court's determination of whether Kehagias can recover under the bad faith failure to settle claim.

### D.    Bad Faith Failure to Adjust and Process

Kehagias alleges that Founders failed to properly adjust and process the claim once it received notice.  However, these allegations are anything but clear.  "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed."  Mixson, Inc., 562 S.E.2d at 662 (citing Tadlock, 473 S.E.2d at 52).  "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action."  Tadlock, 473 S.E.2d at 53 (quoting Nichols, 306 S.E.2d at 619).  "[B]ad faith refusal to pay benefits and breach of implied warranty of good faith and fair dealing are not separate causes of action.  Rather, all bad faith actions—including claims based on bad faith processing of the claims when there is no breach of the insurance contract—arise out of the implied warranty of good faith and fair dealing."  Ocean Winds Council, 241 F. Supp. 2d at 577.

### i.    Bad Faith Processing Regarding the Offer

Specifically, Kehagias alleges that when Ortiz received the Offer, Squalls never forwarded it to the Ruths but only called them to inform them that a $50,000.00 offer had been made.  Kehagias further alleges that Squalls never informed the Ruths that the Offer was time limited or that it stated that a partial or complete rejection would cause the Offer to be immediately and permanently withdrawn, nor did Squalls inform the Ruths that she intended to reject the offer, or that she was contemplating filing a declaratory judgment action.  As further evidence of bad faith processing, Kehagias cites an email between Ortiz, the underlying liability adjustor, and Squalls, the coverage file adjustor, in which Ortiz updated Squalls on the status of his filing, stating: "You did not hear this from me,

maybe you overheard me speaking with my defense attorney though . . ." ECF No. 117 Ex. 3. Kehagias contends that this is evidence of bad faith because there should be a "Chinese wall" between the coverage file and the underlying liability file. ECF No. 117, at 9.

Ms. Ruth testified that Squalls kept her apprised of each offer as it was being made, that she and Mr. Ruth received copies of letters going back and forth between Founders and the Anastopoulo Law Firm concerning settlement offers, and that she was following along as those letters were being sent. See Ms. Ruth Dep. 64:15–65:25 ("Question: [D]id you get copies of different letters back and forth between Founders and the Anastopoulo firm concerning settlement offers that were being made back and forth? Answer: Yes, sir."). Squalls testified that she does not "recall what specifics in the [offer of compromise] letter [she] discussed with" Mr. Ruth. ECF No. 117 Ex. 4, Squalls Dep. 38:22–23. However, she does testify that she discussed what she believed to be the Policy limits and the Offer with Mr. Ruth. Further, Squalls copied the Ruths on the correspondence when sent the initial offer of $50,000.00. Ex. 30; Ex. 40. She also sent the Ruths the next letter Founders received from Kehagias's attorney indicating that it intended to proceed to seek a judgment. Ex. 42, Ex. K. Squalls's claim notes also indicate that she spoke with Mr. Ruth on October 1, 2013 and explained to him that she was seeking authority to settle the claim for $105,000.00. Ex. 43. Additionally, Squalls sent a copy of the October 29, 2013 letter to the Ruths.

Kehagias does not cite a single case, much less a case with similar facts, in which a court imposed bad faith liability on an insurer for failure to inform the insured of the specific details of an offer of compromise. In Ocean Winds, the court held that the

following evidence created a genuine issue of material fact as to whether the insurer acted in bad faith in processing the insured's claim:

> [The insured's expert] testified that [the insurer] "never has outright denied the claim or gave [sic] any reason why it was denying the claim." In addition, [the expert] cited [the insurer's] "attitude about the claim, that they are not there to try to resolve the claim one way or the other. It is trying to find ways to not provide the coverage." Specifically, [the expert] pointed out that the internal files showed that the [insurer] was considering using the fact that [the insured] had not presented a "proof of loss" as a reason for denying the claim when [the insurer], when "by both their guidelines and also by the policy, they are the ones that are supposed to provide the proof of loss form to the insured."

Id. at 577. The insured's expert testified that the insurer: "(1) failed to provide a copy of the reservation of rights letter to the insured; (2) failed to provide a proof of loss form to the insured as required by it claims handling guidelines manual; (3) failed to respond to correspondence from the insured attorney; and (4) failed to deny the claim or give any reasons for denying the claim." Id. at 576–77.

To the contrary, Squalls provided a copy of the Offer to the Ruths, forwarded them all correspondence with the Anastopoulo Law Firm, and discussed the policy limits and the reasons for denying Kehagias's Offer. Based on the evidence in the record, Founders acted reasonably after it received notice of the claim. See Temple v. Mut. of Omaha Ins. Co., No. 4:11-cv-00128, 2013 WL 314750, at *5 (D.S.C. Jan. 28, 2013) ("[T]he crux of a bad faith case is still whether 'there is a reasonable ground for contesting [or delaying] a claim . . . .'" (quoting Crossley, 415 S.E.2d at 397)).

Further, South Carolina courts have found that where a policy provides an insurer with the right and duty to defend, the insurer has "the right and the duty to control the defense until such time as it [i]s determined that it ha[s] no liability insurance coverage."

19

Allstate Ins. Co. v. Wilson, 193 S.E.2d 527, 530 (S.C. 1972) (emphasis added). If courts allowed insureds to create a genuine issue of material fact on a bad faith processing claim by engaging in a "nit-picky" analysis of each action the insurance adjustor took or did not take in handling claims, every bad faith action would survive a motion for summary judgment. There must still be an evaluation of the reasonableness of the insurer's conduct, and under these circumstances, Founders did not act unreasonably.

Moreover, to the extent Kehagias's claim rests on Squall's mistake in determining the policy limits, such a mistake does not rise to the level of bad faith. See Snyder v. State Farm Mut. Auto. Ins. Co., 586 F. Supp. 2d 453, 463 (D.S.C. 2008) (granting summary judgment in favor of insurer under South Carolina law and holding "[t]here has been no evidence presented that [the d]efendant did anything other than erroneously estimate the overall value of [the plaintiff's] bodily injury claim, which was simply making a costly mistake, not acting in bad faith."); see also Wheeler v. Dynamic Eng'g, Inc., 62 F.3d 634, 641 (4th Cir. 1995) (applying Virginia law, which also defines bad faith in terms of reasonableness, to conclude that "mere . . . error does not constitute bad faith").

### ii.       Bad Faith Processing of Initial Letter of Representation

Kehagias's most viable bad faith processing claim rests on whether Hull failed to process the claim after receiving the November 2012 letter from the Anastopoulo Law Firm. There is evidence that Dumez sent Hull the notice letter but that Hull failed to forward the notice letter to Founders. Dumez faxed the letter to Yount at Hull twice. "[I]n a bad faith action against the insurer, the acts of the adjuster or adjusting company (agent) may be imputed to the insurer (principal)." Charleston Dry Cleaners & Laundry,

20

Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 589 (S.C. 2003).  Although Hull is an

insurance broker and not an adjuster, the agency arguments are analogous.  If Hull's

actions were unreasonable, subjecting Hull to liability, and Hull's actions can be imputed

to Founders, Founders may be subject to liability.

In South Carolina, "[a] party asserting agency as a basis of liability must prove

the existence of the agency, and the agency must be clearly established by the facts."

Orphan Aid Soc'y v. Jenkins, 362 S.E.2d 885, 887 (S.C. Ct. App. 1987) (quoting McCall

v. Finley, 362 S.E.2d 26 (S.C. Ct. App. 1987)).  "It is the duty of one dealing with an

agent to use due care to ascertain the scope of the agent's authority.  Id.  "An agent's

authority is composed of his or her actual authority, whether express or implied, together

with the apparent authority which the principal by his or her conduct is precluded from

denying.  Thus, an agent's authority must be either expressed, implied, or apparent."

Roberson v. S. Fin. of S.C., Inc., 615 S.E.2d 112, 115 (S.C. 2005).  "While actual

authority is expressly conferred upon the agent by the principal, apparent authority is

when the principal knowingly permits the agent to exercise authority, or the principal

holds the agent out as possessing such authority."  Id. (citing Moore v. North Am. Van

Lines, 423 S.E.2d 116, 118 (S.C. 1992)).

There is evidence that Hull was working as Founders's agent.  Hull was retained

by Founders to procure insurance contracts on its behalf pursuant to a "Producer

Agreement."  Although the Producer Agreement between Founders and Hull stated that

Hull would serve as an independent contractor, the language of a private agreement is not

in and of itself dispositive of an agency relationship.  Hull's name and information were

on the front page of the Policy as the "Producer."  The Producer Agreement between

21

Founders and Hull stated that "PRODUCER [Hull] shall, immediately following receipt, notify COMPANY [Founders] in writing of any loss or claim against any policy of insurance issued by COMPANY."  ECF No. 166, Ex. 4, 3.  Hull served as the middleman between the Ruths and Founders for this claim and for previous claims.  Dumez Dep. 74:7–9.  Dumez testified that "the way it would always work . . . is that if [the Ruths] notified [her], [she] would notify [Yount], and then [Yount] would open the claim with the insurance company."  Dumez Dep. 85:8–25; 86:1–15.  Further, when Dumez forwarded the original letter from the Anastopoulo Law Firm, Yount at Hull gave Dumez "the impression that she would then send it to Founders."  Id.

However, in his response to Founders's motion for summary judgment, Kehagias concedes that his bad faith failure to process claim is not based on actions or inaction in response to the original November 2012 letter.  ECF No. 117, at 6 ("Defendants seem to suggest that the basis for this claim is Founders' failure to properly process the original letter of representations.  Such is not the case at all.") (emphasis added).  Further, during the December 14, 2015 hearing, Kehagais's attorney stated:  I do concede – I'm not trying – we are not trying to say as a part of the bad faith that the mishandling of the original claim letter is the basis, or any basis, for the bad faith."  H'rg Tr. 56:20–57:15.  Although the court will discuss these agency issues in depth in the order on Utica and Hull's motion for summary judgment, based on Kehagais's concession, Founders is not liable for bad faith based on Hull's failure to send the notice letter.

Therefore, the court grants Founders's motion for summary judgment as to Kehagias's bad faith claim.[12]

### E.  Punitive Damages

Founders argues that Kehagias is not entitled to punitive damages because there is no evidence that Founders or Utica acted in a reckless, willful, or wanton manner.  ECF No. 123, at 6.  In South Carolina, "the plaintiff has the burden of proving [punitive] damages by clear and convincing evidence."  S.C. Code Ann. § 15–33–135. South Carolina courts have also held that "[i]n order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights."  Scott v. Porter, 530 S.E.2d 389, 396 (S.C. 2000) (citing Lister v. NationsBank of Delaware, N.A., 494 S.E.2d 449, 458 (S.C. 1997)).  Kehagias does not address Founders's summary judgment motion as to his request for punitive damages.

During the December 14, 2015 hearing, the court asked Kehagias's attorney: "What evidence of willful, wanton or reckless conduct do you base your punitive damages?"  Hr'g Tr. 40:1–3.  Kehagias's attorney cited evidence that Squalls counteroffer of $50,000.00 but testified that she was expecting negotiations.  Hr'g Tr. 40:4–25.  Kehagias's attorney contends that Squalls's handling of the claim was reckless because she failed to properly communicate with the Ruths and recklessly handled the

---

[12] Notably, these agency issues are further implicated in Kehagias's negligence claim.  As fully discussed in the court's order on Hull's motion for summary judgment, ECF No. 158, Hull's negligence can be imputed onto Founders.  Therefore, Kehagias's negligence claim against Founders survives because there is a genuine issue of material fact as to whether Hull was Founders's agent and was negligent in failing to forward the original notice letter.

claim.  Id.  Kehagias's attorney additionally points to evidence that Ortiz, the claims adjuster, communicated with Squalls about the Ruths' claim in violation of company policy.  Hr'g Tr. 41:6–25.  The court does not find that there is any evidence that Squalls's conduct rose to the level of reckless, willful, or wanton conduct.  Therefore, the court grants Founders and Utica's motion for summary judgment as to Kehagias's request for punitive damages.

### F.      Negligence Per Se

Kehagias's negligence per se claim alleges that Founders and Utica violated section 38-47-20 of the South Carolina Code of Laws because neither adjustor assigned to the claim in question was licensed in South Carolina at the relevant time.  Founders requests that the court grant summary judgment on Kehagias's negligence per se claim because section 38-47-20(a) does not provide a private cause of action.  ECF No. 87, 26. Kehagias did not oppose Founders and Utica's request for summary judgment as to the negligence per se claim and did not even address the claim in the briefing.  Further, during the December 14, 2015 hearing, Kehagias's attorney stated that the negligence per se claim is "rolled into the negligence, the bad faith, and the unreasonableness."  Hr'g Tr. 39:11–16.  Therefore, the court grants Founders's and Utica's motion for summary judgment as to the negligence per se claim.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Founders's motion for summary judgment.  Specifically, the court grants Founders's motion and dismisses Kehagias's breach of contract, bad faith, and negligence per se claims.  However, Kehagias's negligence claim regarding Hull's alleged negligent failure to process the original notice letter survives and is imputed onto Founders.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 8, 2016**
**Charleston, South Carolina**