IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| FOUNDERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 2:13-cv-3035-DCN |
| RICHARD RUTH'S BAR & GRILL LLC, | ) | |
| RICHARD RUTH, SR., JANE RUTH, | ) | |
| and GEORGE GIANNARIS, *as guardian* | ) | |
| *for* EMMANUEL KEHAGIAS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| RICHARD RUTH'S BAR & GRILL LLC, | ) | |
| RICHARD RUTH, SR., and JANE RUTH, | ) | |
| and GEORGE GIANNARIS, as guardian | ) | No. 2:14-cv-03272-DCN |
| for EMMANUEL KEHAGIAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| FOUNDERS INSURANCE COMPANY, | ) | |
| BROWN & BROWN, INC., HULL & | ) | |
| COMPANY, INC., and UTICA MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on bad faith action (2:14-cv-03272) defendant Utica Mutual Insurance Company d/b/a Utica National Insurance Group's ("Utica") motion for summary judgment.[1] ECF No. 89. Defendant Founders Insurance Company

---

[1] Utica is not a party to the declaratory judgment action. Utica joins in Founders's motion for summary judgment in the bad faith action and argues that it is similarly

1

("Founders") is a wholly-owned subsidiary of Utica. For the reasons set forth below, the court grants Utica's motion for summary judgment.

## I. BACKGROUND[2]

This is a consolidated matter that involves two separate but related actions. The first is a declaratory judgment action, 2:13-cv-03035, in which plaintiff Founders requests that the court declare that it is not required to provide coverage under a general liability policy ("the Policy")[3] because the insureds failed to provide timely notice of the underlying personal injury lawsuit. The second action is a bad faith action, 2:14-cv-03272, filed by declaratory judgment action defendants and bad faith action plaintiffs

---

entitled to summary judgment for all the same reasons outlined in Founders's motion. Utica incorporates Founders's motion by reference. Utica Mot. 3. Utica advances three additional reasons why it is entitled to summary judgment that the court will address in this order.

[2] Founders and Utica filed a motion for leave to file a joint concise statement of undisputed material facts ("SUMF") on October 14, 2015 in "an effort to streamline its submissions and avoid duplication." ECF No. 156. The motion contains 56 exhibits. ECF No. 157. Founders cites the SUMF within the various motions in support of its factual contentions and arguments. On November 11, 2015, the Ruths and Kehagias filed a response in opposition to Founders's motion to file a joint concise statement. The Ruths and Kehagias do not oppose the motion but do not concede that they agree that the facts contained therein are undisputed. Indeed, the Ruths contend that many of the facts are disputed. However, the Ruths do not dispute Founders's ability to file the motion. ECF No. 177. The court grants Founders's motion to file the joint concise statement but will not consider the facts contained therein as undisputed. Given that there are two docket numbers in this case and the parties have filed countless submissions and exhibits, the court will refer to the exhibits attached to Founders's motion, ECF No. 157, within this order. Therefore, a direct citation to an Exhibit refers to the exhibits contained and numbered in ECF No. 157 under docket 2:13-cv-3035.

[3] Founders does not sell insurance policies directly to consumers. Rather, an insurance wholesaler markets and sells the policies through local independent agents. The Ruths purchased their Policy from the Cherie Dumez Agency. The Policy was procured by an insurance wholesaler known as Hull & Company, Inc. ("Hull"), a defendant in the bad faith action. Hull is a wholesale broker of insurance. ECF No. 43, Kehagias Am. Compl. ¶ 14.

Richard Ruth's Bar & Grill LLC ("Richard's Bar"), Richard Ruth, Sr. ("Mr. Ruth"), Jane Ruth ("Ms. Ruth") (collectively "the Ruths"), and Kehagias, as the Ruths' assignee alleging that Founders, Utica Mutual Insurance Company ("Utica"),[4] Hull & Company, Inc. ("Hull"), and Brown & Brown, Inc. ("Brown")[5] failed to properly handle the underlying personal injury claim.[6]

On September 29, 2012, a patron of Richard's Bar struck Kehagias during a pool game, and Kehagias suffered severe injuries and permanent brain damage as a result. After the incident, George Giannaras ("Giannaras"), Kehagias's brother-in-law, was appointed to serve as Kehagias's Guardian. On November 21, 2012, the Anastopoulo Law Firm sent Mr. Ruth a letter ("notice letter") notifying him that Kehagias retained the firm to represent him in connection with the injuries he sustained at the bar. Kehagias's Mot. Summ. J. Ex. 1. The notice letter asked that Mr. Ruth "[p]lease forward this letter to any and all insurance carriers with policies applicable to Richard's Bar and Grill, Richard Ruth, and the building housing Richard's Bar and Grill immediately." Id. On November 26, 2012, Ms. Ruth sent the notice letter to their local agent, Cherie Dumez ("Dumez") at the Cherie Dumez Agency. Ex. 17. The following day, Dumez emailed the notice letter to Hull. Ex. 18. Kehagias filed the underlying injury suit on December 19, 2012 in the Court of Common Pleas for the Ninth Judicial Circuit.[7] Ex. 7. Ms. Ruth

---

[4] Founders is a wholly-owned subsidiary of Utica. Am. Compl. ¶ 10, ECF No. 89, 2.

[5] Hull is a subsidiary of Brown. ECF No. 96, at 3.

[6] The Ruths assigned their right to sue in a bad faith action to Kehagias on May 28, 2014. Ex. 49

[7] In the underlying personal injury suit, Kehagias asserted claims for negligence, assault and battery, negligent security, and gross negligence. See Ex. 7.

was served with the Summons and Complaint on January 8, 2013.[8] Dumez emailed the notice letter to Hull a second time on January 9, 2013. Ex. 19.

Kehagias contends that the Ruths notified Dumez and that Dumez in turn notified Hull, the insurance wholesaler. Kehagias further contends that "Hull either failed to forward the letter to Founders, or, if they did, Founders failed to process it." Kehagias Mot. for Summ. J. 7. Neither the Ruths, nor anyone on their behalf, filed an answer, and on February 22, 2013, the court entered an Order for Entry of Default against the Ruths in the underlying action. Ex. 26. Founders received notice of the underlying lawsuit on May 15, 2013 when Hull sent the notice letter to Founders. Ex. 20 (email from Hull to Founders describing the claim as a "new claim" and requesting the "claim number ASAP as the agent originally submitted in January"). Founders disputes Kehagias's claims that the Ruths notified Dumez after being served and that Dumez notified Hull. Founders's Resp. 5 n.5. Upon receiving notice, Founders assigned the claim to adjustor Carlos Ortiz ("Ortiz"), and he began an investigation. Founders "escalated" the claim after learning of the severity of the injuries, opened a separate "coverage" file, and assigned adjustor Alberta Squalls ("Squalls") to investigate the late notice issue.

On May 22, 2013, J.D. Smith ("Smith"), retained by Founders to represent the Ruths in the underlying action, filed a motion to set aside the default. On August 27,

---

[8] Notably, Ms. Ruth is not the registered agent of Richard's Bar and is not authorized to receive service on behalf of Richard's Bar. Further, Ms. Ruth is not a member of the LLC, nor does she have any ownership interest in the LLC. Founders disputes that Richard's Bar was properly served. However, in the order denying Founders's motion to set aside default in the underlying personal injury lawsuit, Judge Nicholson stated: "This Court finds based on the evidence submitted by Plaintiff, that Mrs. Ruth was an agent and manager of the Defendant Richard Ruth's Bar and Grill, and that service was thereby effectuated." Kehagias's Mot. for Summ. J. Ex. 10, at 2.

2013, the Anastopoulo Law Firm sent an offer of compromise ("Offer") to Smith.  Ex. 33.  The letter included a demand "for payment of policy limits" and stated:  "At 5:00 p.m. EDT on September 9, 2013, this offer will be withdrawn and we will obtain an excess judgment against your insured."  Id.  The offer did not include a specific amount and stated that "[i]f any condition is not met, or if any additional condition is imposed by [Founders], including but not limited to conditions of indemnification or the waiver of any rights or claims not specified herein, this offer of compromise will be withdrawn."  Id.  In response to the Offer, Smith sent Kehagias's attorney an email inquiring about the specific amount demanded, stating:  "I understand that this policy has limits of $50,000 and want to make sure we are on the same page with the limits before I forward the demand to the carrier."  Ex. 35.  Kehagias's attorney responded that he understood the policy limits to be $1,005,000.00 and was therefore demanding that amount.  Id.

On September 3, 2013, Squalls responded to the offer of compromise, rejecting the offer but providing a counteroffer of $50,000.00.  Ex. 40.  On September 10, 2013, Kehagias's attorney sent a notice of the withdrawal of the offer of compromise because no payment had been received.  Ex. 42.  On October 29, 2013, Squalls sent Kehagias's attorney a second offer of compromise.  Ex. 50.  Squalls stated that "[b]ased on [Founders's] re-examination of its Policy provisions as may apply to this claim, Founders has determined that the maximum available coverage which could potentially be afforded to its insureds" was $105,000.00.  Id.  Kehagias's attorney never responded to Founders's second offer.  Kehagias filed an opposition to the Ruths' motion to set aside the entry of default on October 24, 2013, and the state court conducted a hearing on the motion on

October 30, 2013. Founders filed the present declaratory judgment action on November 6, 2013.

On January 17, 2014, Judge Nicholson denied the Ruths' motion to set aside the entry of default in the underlying state court action. Ex. 45. Judge Newman held a damages hearing on March 19, 2014, and on April 29, 2014, entered a default judgment against the Ruths in the amount of $5,000,000.00. Ex. 55. At the Ruths' request, Smith appealed Judge Newman's default judgment on May 28, 2014. That same day, the Ruths executed an agreement with Kehagias under which Kehagias agreed not to execute the judgment against the Ruths, and the Ruths assigned their right to sue Founders and Hull for bad faith to Kehagias. Ex. 49.[9] On May 29, 2014, one day after the assignment, the Ruths' personal counsel advised Founders that the Ruths no longer wished to appeal. Ex. 50. Kehagias, as the Ruths' assignee, filed the bad faith action on August 14, 2014.[10] On August 20, 2014, the Ruths' personal counsel directed Founders to dismiss the appeal. Ex. 52. Founders thereafter authorized Smith to dismiss the appeal in accordance with the Ruths' request. Ex. 53.

---

[9] Notably, as discussed below, the Ruths did not assign their right to sue Utica or Brown. Ex. 49.

[10] Kehagias brings the following claims in his bad faith action: (1) breach of contract for failure to defend and timely pay the policy limits, Kehagias's Am. Compl. ¶¶ 58–65; (2) negligence/gross negligence in processing the claim because Hull received the November 12, 2012 letter from the Anastopoulo Law Firm but Hull and Founders failed to properly process and handle the letter, id. ¶¶ 67–73; (3) bad faith failure to properly and effectively investigate the claim and failure to settle the claim within the policy limits and failure to otherwise act as a reasonable and prudent insurance company under the circumstances, id. ¶¶ 78–102; and (4) negligence per se for violation of S.C. Code Ann. § 38-47-10, which requires an insurance adjuster to be licensed in South Carolina, id. ¶¶ 104–115.

Utica is an insurer based in New York. SUMF ¶ 2. Founders is a wholly-owned subsidiary of Utica with separate operations based in Illinois. Ex. 1, Am. Compl. ¶ 9. Utica is not a party to the insurance contract; however, once a claim meets specific predetermined thresholds, the claim is "escalated" to Utica by means of an "escalation report." Id. ¶ 80. On May 31, 2013, Founders sent an "escalation report" to Utica on the underlying claim against the Ruths. Id. ¶ 84 At that time, Utica's only role was to provide some oversight and direction over the handling and settlement of the claim. Utica's Answer to Am. Compl. ¶ 83.

Utica filed the present motion on October 14, 2015. ECF No. 89. Kehagias filed a brief response in opposition on November 12, 2015. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."
Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Anderson, 477 U.S. at 255.

### III.   DISCUSSION

Kehagias contends the Utica is liable for bad faith in failing to settle the claim within policy limits and failing to properly investigate and process the claim. For the same reasons outlined in the court's order on Founders's motion for summary judgment, ECF No. 86, the court grants Founders and Utica's motion for summary judgment for the bad faith failure to settle claim. However, the court will address the bad faith failure to process claim as it concerns Utica below. Utica contends that it is entitled to summary judgment for the following reasons: (1) Utica was not aware of the underlying claim until May 31, 2013, and thus, there is no basis on which to hold Utica responsible for failing to investigate and defend the claim; (2) Utica had no contractual relationship with

8

Kehagias; (3) the parent-subsidiary relationship between Founders and Utica is not sufficient to impute liability to Utica for Founders's actions; (4) the negligence per se claim fails as a matter of law because the South Carolina statute on which it is based does not confer a private cause of action, and there is no evidence that Utica exercised control over the hiring and retention of Founders's adjusters; and (5) there is no evidence of willful, wanton, or reckless conduct to support a claim of punitive damages against Utica.[11] The court will address each argument in turn below.

Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 771–72 (D.S.C. 2006) (citing Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983) (emphasis added)). An insured establishes that an insurer breaches this covenant of good faith if the following elements are met: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; (4) causing damage to the insured. Id. (citing Bartlett v. Nationwide Mut. Ins. Co., 348 S.E.2d 530 (S.C. Ct. App. 1986); Nichols, 306 S.E.2d at 616). Under South Carolina law, an insured may recover damages for bad faith denial of

---

[11] The court discussed Utica's negligence per se and punitive damages arguments at length in its order on Founders's motion for summary judgment, ECF No. 86. As fully set forth in that order, the court grants Founders's motion for summary judgment as it pertains to the negligence per se and punitive damages claims. Therefore, the court will not address the parties' arguments or the court's corresponding rulings in this order.

coverage if he proves that there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract. Id. (citing Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co., 241 F. Supp. 2d 572, 576 (D.S.C. 2002)). However, "if there was an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it." Id. (citing Mixson, Inc. v. Am. Loyalty Ins. Co., 562 S.E.2d 659 (S.C. Ct. App. 2002)). "Whether such an objectively reasonable basis for denial existed depends on the circumstances existing at the time of the denial." Id. (citing State Farm Fire and Cas. Co. v. Barton, 897 F.2d 729 (4th Cir. 1990) (interpreting South Carolina law)). "When conflicting evidence is presented, summary judgment on the issue of bad faith is generally inappropriate; however, a court may grant summary judgment on this issue if, viewing the evidence in the light most favorable to the plaintiff, no reasonable finder of fact could have found for the plaintiff on her bad faith claim." Id. (emphasis added).

In Tadlock Painting Co. v. Maryland Casualty Co., 473 S.E.2d 52 (S.C. 1996), the South Carolina Supreme Court underscored its holding from previous cases that the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed. The court recognized that "the benefits due an insured are not limited solely by those expressly set out in the contract." Id. at 473 S.E.2d at 55. The South Carolina Supreme Court has further held that in disposing of a Tyger River[12] claim, the factfinder "is entitled to consider negligence on

---

[12] In Tyger River Pine Co. v. Maryland Casualty Co., 170 S.E. 346 (S.C. 1933), the South Carolina Supreme Court held that an insurer's unreasonable refusal to settle within policy limits subjects the insurer to tort liability.

the issue of unreasonable refusal to pay benefits." Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 620 (S.C. 1983).

It is undisputed that Utica did not have any involvement with Kehagias's claim until May 31, 2013 when it received an escalation report from Founders. However, Kehagias's allegations relate to Utica's handling and processing of the claim once it was involved. Specifically, Kehagias alleges that Paul Coughlin of Utica was directing the settlement negotiations, and that Utica had the final say on all settlement negotiations. However, Kehagias does not cite the record or any evidence to support his claim. Kehagias also does not describe how Utica acted unreasonably in processing the claim.

Most importantly, Utica is not the insurer and did not have a contractual relationship with Kehagias. In South Carolina, although the insurer owes the insured a duty of good faith and fair dealing, "this duty of good faith arising under the contract does not extend to a person who is not a party to the insurance contract." Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003) (citing Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co., 310 S.E.2d 163 (S.C. Ct. App. 1983)). "Thus, no bad faith claim can be brought against an independent adjuster or independent adjusting company." Id. As stated above, Kehagias must establish the existence of a mutually binding contract of insurance between the Ruths and Utica to establish that a Utica breached the covenant of good faith. See Shiftlet, 451 F. Supp. 2d at 771–72. There was no mutually binding contract of insurance with Utica. Founders and the Ruths were the only parties to the contract, and Utica's name is not displayed anywhere on the contract.

Further, "[s]tock ownership alone ordinarily does not render a parent corporation liable for the contracts of its subsidiary irrespective of whether the subsidiary is wholly owned or only partially owned; and the fact that a parent and subsidiary share common officers or directors does not by itself impose liability on the parent for the contracts of its subsidiary." Carroll v. Smith-Henry, Inc., 313 S.E.2d 649, 651 (S.C. Ct. App. 1984). Although South Carolina does recognize the concept of "piercing the corporate veil," this court has held that in order to pierce the corporate veil to impose liability upon a parent corporation for bad faith, the plaintiff must meet the two-prong test outlined in Sturkie v. Sifly, 313 S.E.2d 316 (S.C. 1984). Univ. Med. Assocs. of Med. Univ. of S.C. v. UnumProvident Corp., 335 F. Supp. 2d 702, 707 (D.S.C. 2004) ("The first prong is an eight-factor test designed to analyze the corporation's adherence to the corporate form, and it includes questioning (1) whether the corporation was grossly undercapitalized; (2) its failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and, (8) whether the corporation was merely a facade for the operations of the dominant stockholder. The second prong of the Sturkie test mandates that 'there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the [shareholders].'" (quoting Sturkie, 313 S.E.2d at 318)). Kehagias has failed to put forth any evidence that Founders was undercapitalized or that it failed to observe corporate formalities, nor has Kehagias

provided evidence of any of the aforementioned factors sufficient to pierce the corporate veil.

Therefore, because Utica does not have a contractual relationship with Kehagias, and Kehagias failed to provide any evidence sufficient to pierce the corporate veil, the court grants Utica's motion for summary judgment on all of Kehagias's claims.

### IV.   CONCLUSION

For the reasons set forth above and in the court's order relating to Founders's motion for summary judgment, ECF No. 86, the court **GRANTS** Utica's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 8, 2016**
**Charleston, South Carolina**